# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| GARY SMITH and MARTHA SMITH, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 4:21-CV-837 |
| | § | Judge Mazzant |
| STATE FARM LLOYDS, | § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Strike Plaintiffs' Expert Tom Witherspoon (Dkt. #68). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED.**

### BACKGROUND

This case arises out of an insurance agreement between the parties and a question of payment after a tornado struck Plaintiffs' home (Dkt. #1 at pp. 2–3). The parties are scheduled for trial starting on January 23, 2023.

Plaintiffs Gary and Martha Smith (collectively, "Smith") intend to call Tom Witherspoon ("Witherspoon") as an expert witness at trial to discuss structural damage to the Smith home and causation (Dkt. #104, Exhibit 7 at p. 181). In preparation for this case, Witherspoon visited the Smith home on three different occasions and created a report following each visit. The three reports were taken on the following dates: October 30, 2019; April 17, 2020; and July 6, 2021 (the "July 6 Report") (Dkt. #68 at pp. 2–3). According to the Scheduling Order guiding this case, the parties were to disclose experts and their reports by April 1, 2022 (Dkt. #68 at p. 2). Smith timely disclosed Witherspoon's first two reports, however, Smith failed to disclose Witherspoon's July 6

Report within the appropriate deadline. On October 31, 2022, Defendant State Farm Lloyds ("State Farm") was made aware of the existence of the July 6 Report during Witherspoon's deposition (Dkt. #68 at p. 2–3). Upon learning that State Farm had not received the July 6 Report, Smith sent State Farm the July 6 Report later that day and offered State Farm the opportunity to conduct Witherspoon's deposition at another time (Dkt. #109 at p. 2). Although the July 6 Report was given to State Farm almost seven (7) months after the deadline, State Farm waited almost another two (2) months to file for leave to file a motion to strike Witherspoon as a witness (Dkt. #63). The Court granted leave and allowed State Farm to file its motion (Dkt. #96).

On December 23, 2022, State Farm filed the pending motion, requesting that the Court strike Witherspoon entirely, or in the alternative, strike the July 6 Report (Dkt. #68). On January 17, 2023, Smith filed a response arguing that State Farm's motion is untimely, and that the untimely disclosure was harmless to State Farm (Dkt. #109).[1]

## LEGAL STANDARD

### I. Federal Rule of Evidence 702

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the

---

[1] While the currently briefing schedule permits a reply and sur-reply for the pending motion, the Court reminds the parties that "[t]he court need not wait for the reply or sur-reply before ruling on the motion (Dkt. #8). LOCAL RULE CV-7(F). With trial quickly approaching, the Court need not wait for these responses to issue a ruling.

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594.  In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Id.* at 593–94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test."  *Id.* at 593.  As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152.  Accordingly, the decision to allow or exclude experts from testifying

under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## II. Untimely Disclosed Expert Report

Parties must make timely expert-witness disclosures within the deadlines set by the Court's Scheduling Order. *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255, 2019 WL 1436659, at *21 (N.D. Tex. Mar. 31, 2019) (citing FED. R. CIV. P. 26(a)(2)(D)). "A district court may grant a party leave to supplement an expert's report after the deadline in the scheduling order has expired, but only if good cause is shown under Rule 16(b)." *Id.*

The Court considers four factors is evaluating whether good cause exists: (1) the explanation for the failure to timely disclose; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). In conducting this analysis, the Court remains mindful that Rule 26 exists "to prevent unfair surprise at trial and to permit the opposing party to prepare for rebuttal reports, to depose the expert in advance of trial, and to prepare for cross-examination." *Payne v. Brayton*, No. 4:15-CV-809, 2017 WL 194210, at *3 (E.D. Tex. Jan. 18, 2017).

## ANALYSIS

State Farm's motion has two main arguments. First, State Farm argues that Witherspoon "does not meet the minimum standards of the *Daubert* rule because the opinions expressed in it are pure *ipse dixit,*" and therefore, Witherspoon should be excluded entirely (Dkt. #68 at p.1). Second, State Farm argues that the July 6 Report should be excluded because of its untimely disclosure (Dkt. #68 at p. 1). The Court will address each argument in turn.

I.   *Daubert*

State Farm argues that Witherspoon's opinions are mere *ipse dixit*, meaning that there is too large of an analytical gap between the expert's opinion evidence and the existing data. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). However, based on the nature of the parties' dispute and Witherspoon's expertise, the Court disagrees. *See Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 630–31 (5th Cir. 2008); *Griletta v. Lexington Ins. Co.*, 558 F.3d 359, 365–66 (5th Cir. 2009) (finding a "battle of the experts" from engineers who offered differing views as to what ultimately destroyed the home at issue).

Witherspoon is a professional engineer who visited the Smith home on three different occasions. According to his resume, Witherspoon is member of numerous engineering organizations and has been published on the topic many times (Dkt. #68, Exhibit 5 at pp. 63–64). According to his deposition, Witherspoon has had his engineering license since 1978, has given his deposition in over fifty (50) cases, and used to own a foundation repair company where he conducted repair estimates and foundation claims for different homes (Dkt. #68, Exhibit 6 at pp. 5, 25–26). Ultimately, the Court finds that he is more than qualified to offer an opinion regarding causation and the value of damages to the Smith home. The Court also recognizes Witherspoon's opinions as more than relevant, seeing as the main dispute between the parties is related the cost owed to Smith by State Farm. Since the parties each have different theories as to what caused some of these damages, i.e., the tornado or pre-existing conditions, the Court finds that Witherspoon's opinions are relevant and helpful for the trier of fact to make a determination as to causation. The Court will now discuss the reliability of Witherspoon's methodology.

The Court recognizes State Farm's argument that it is skeptical of Witherspoon's methods in this case. Witherspoon alleges that according to only the pictures taken and his personal observations, he was able to determine causation based on whether the damage was fresh. In doing

so, Witherspoon cannot point to a specific named method or any specific testing that he conducted on the Smith home and when asked if the jury would "just have to take [his] word for it," Witherspoon responded in the affirmative (Dkt. #68, Exhibit 2 at pp. 25–26). However, the Court finds that Witherspoon used his years of experience to explain what certain cracks and foundation movement meant related to this case. For his opinions, Witherspoon visited the home while it was still standing on multiple occasions, analyzed the damage done, and took pictures to help supplement his findings, which sounds similar to the thousands of claims that he has done for his old repair company (Dkt. #68, Exhibit 2 at p. 26).

In similar cases, a district court has excluded expert witnesses only when the witness's opinion has admitted mistakes or fails to explain how the damages could be possible when looking at the totality of the circumstances. *See Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 854–55 (S.D. Tex. 2020) (identifying that expert's opinion had plainly wrong facts and that because he failed to explain how water damage from the roof could occur on the first floor and not the second floor, his principles and methods were unreliable); *Tardo v. State Farm Fire and Cas. Co.*, No. 08-1165, 2009 WL 1804766, at *3 (E.D. La. June 22, 2009) ("The unreliability of Savage's method is confirmed by his admitted mistakes."). Here, the Court fails to find any admitted mistakes or any issues with Witherspoon's opinions as wholly inconsistent like the cases listed above. Therefore, it will be up to the jury to decide whether his experience and methods in this case are a sufficient evaluation of the damage to the Smith home, especially when considered against State Farm's expert witnesses. The Court finds that Witherspoon's opinions meet the minimum threshold under *Daubert* and will be allowed to testify at trial. The Court will turn to the issue of the July 6 Report.

## II. July 6 Report

Both parties agree that the July 6 Report was not timely disclosed (Dkt. #109 at p. 7). The dispute comes down to whether this late disclosure was harmless. *Ihde v. HME, Inc.*, No. 4:15-CV-585, 2017 WL 3267798, at *2 (E.D. Tex. Aug. 1, 2017) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless"). The Court finds that this late disclosure was ultimately harmless to State Farm, as any potential prejudice was remedied by Smith. Therefore, the opinions discussed in the July 6 Report will be allowed at trial.

As a preliminary matter, the Court does take into consideration the reason for delay and importance of the evidence. Although Smith has not given a reason for this untimely disclosure, the Court does not see any evidence on the record that it was done with malice. Additionally, as to the importance of the July 6 Report, as already mentioned, the main dispute for this case is the amount of damages that were caused by the tornado. In the July 6 Report, Witherspoon conducted "pressure tests" and identified how certain damages to the Smith home have worsened over time (Dkt. #68 at p. 7). The Court finds that these factors weigh in the favor of allowing the evidence to be discussed at trial.

When considering whether untimely disclosed evidence prejudices a party, a court will take into consideration the amount of information the party has to review and whether there is a reasonable amount of time to review that material. *See Hanan v. Crete Carrier Corp.*, No. 3:19-CV-0149, 2020 WL 1692952, at *4 (N.D. Tex. Apr. 7, 2020). Here, the July 6 Report is only five pages long consisting of three pages of written analysis and two pages of new photographs taken (Dkt. #68, Exhibit 7). This is not the voluminous evidence that is typically found that prejudices a party in this type of situation. *Hanan*, 2020 WL 1692952, at *4 (finding prejudice existed when

7

the untimely disclosed evidence consisted of 300 pages of a data download and a dash camera video of the accident). When Smith learned of its untimely disclosure, the report was sent to State Farm the same day, meaning State Farm has had over two months to review these five pages. Additionally, Smith offered State Farm an additional option to depose Witherspoon at another time. While the Court recognizes that Smith should have timely disclosed the July 6 Report, the Court finds that Smith has taken appropriate steps to help remedy this situation. In fact, based on the circumstances, no continuance is needed for State Farm to review this material, as the Court finds there is little to no prejudice resulting from the late disclosure. These factors also weigh in favor of allowing the evidence to be discussed at trial.

In sum, the Court finds that the late disclosure is harmless, mainly because upon learning of its mistake, Smith took appropriate steps to right its wrong. The Court will allow the July 6 Report and the conclusions therein to be discussed at trial.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Strike Plaintiffs' Expert Tom Witherspoon (Dkt. #68) is **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 23rd day of January, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE