# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| GARY SMITH and MARTHA SMITH, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No.  4:21-CV-837 |
| v. | § | Judge Mazzant |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Exclude or in the Alternative Limit the Expert Opinions of Bill Hart (Dkt. #104).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part.**

## BACKGROUND

This case arises out of an insurance agreement between the parties and a question of payment after a tornado struck Plaintiffs' home (Dkt. #1 at pp. 2–3).  The parties are scheduled for trial starting on January 23, 2023.

Plaintiffs Gary and Martha Smith (collectively, "Smith") intended to call Chris Colwell ("Colwell") as an expert witness at trial, since Colwell conducted an estimate on the Smith home (Dkt. #23 at p. 2; Dkt. #86, Exhibit 2).  However, as an independent contractor, Colwell has also worked with Defendant State Farm Lloyds ("State Farm") over the years and does not want his working relationship with State Farm "affected by [him] testifying against State Farm" (Dkt. #86, Exhibit 2 ¶ 5).  Because of Colwell's subjective desire to not testify given his ongoing relationship with State Farm, the Court granted Smith's request to substitute Colwell with Bill Hart ("Hart")

(Dkt. #97).  The Court also allowed State Farm an opportunity to file objections to Hart, given that his report was being disclosed after the initial deadline to object to expert witnesses.

On January 15, 2023, State Farm filed the pending motion, objecting to Hart's opinions (Dkt. #104).  On January 19, 2023, Smith filed its response (Dkt. #111).  On January 20, 2023, State Farm filed its reply (Dkt. #115).[1]  On January 21, 2023, Smith filed a sur-reply (Dkt. #116).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable.  *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific

---

[1] As Smith points out in the sur-reply, State Farm exceeded the page limit permitted for replies as described in the Court's Local Rules (Dkt. #116 at p. 2) (citing LOCAL RULE CV-7(A)(2)).  Because of the unique circumstance of this issue being briefed so close to trial, although no request for leave was filed, the Court would have granted leave and therefore, the Court will allow the reply brief to be considered.  The Court will proceed to decide the pending motion on its merits.

testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

**ANALYSIS**

State Farm has three requests for this Court. First, State Farm essentially asks the Court to reconsider its initial ruling allowing for the substitution of Hart for Colwell (Dkt. #104 at pp. 4–6). Second, State Farm argues that Hart's opinions should be excluded in its entirety because he does not satisfy the requirements of Federal Rule of Evidence 702 (Dkt. #104 at pp. 7–10). Finally, State Farm argues that in the alternative, Hart's opinions should be limited because he is a mere

substitution for Colwell, and any conclusions that he makes that go outside of Colwell's initial opinions should not be permitted (Dkt. #104 at pp. 10–11).

The Court does not agree with State Farm's request related to its prior Order, as it stands by its finding that good cause existed to allow substitution.  However, the Court agrees with State Farm's request that Hart's opinions are not consistent with a "proper substitute."  Accordingly, the Court intends to limit Hart's opinions and will only address whether Hart satisfies the 702 requirements as to Hart's permissible opinions.  The Court will first address the request for reconsideration.

## I.   Reconsideration

State Farm's first argument is that Smith lacks good cause to substitute Hart for Colwell, asking the Court to reconsider its finding to the contrary.  The Court again is presented with this dispute—why Colwell will not testify in this case.  While the Court appreciates the Colwell Declaration, it will not "take up the Colwell Declaration," as the Court has continuously indicated to the parties that Smith's allegation that State Farm's actions are the reason why Colwell wishes not to testify is not relevant for its analysis (Dkt. #115 at p. 2).  Specifically, the Court has never found any wrongdoing on behalf of State Farm on whether it "hired" or "threatened" Colwell to prevent him from testifying, despite what State Farm alleges in the pending motion (Dkt. #104 at p. 4).  The reality is that a potential expert witness who conducted an estimate that would be relevant for the plaintiff's case wishes not to testify because of his job and relationship with the defendant.  The Court did not find that there was good cause because of State Farm's actions, it looked simply at Colwell's situation and how it affected the litigation (Dkt. #97) ("[T]here is a current dispute regarding whether State Farm "instructed" Colwell not to testify for Smith and whether State Farm "threatened retaliation" . . . .  Regardless the outcome of that dispute, it will not change the ultimate conclusion that substitution will be allowed.").

Regardless of the reasoning, Smith should not and will not be required to call Colwell as a witness, given this potential conflict of interest that Colwell raises.  The Court found there was good cause for Colwell to be substituted and allowed for Hart to be the witness to replace Colwell. Thus, the Court disagrees with State Farm's argument that the decision to allow Hart's designation was because State Farm "hired" Colwell (Dkt. #104 at p. 4).  The Court has informed the parties at the telephone conference that it held with the parties on December 8, 2022 (Dkt. #56 at pp.18–19), and will reiterate it again, the Court does not take the fact that Colwell does not wish to testify against State Farm as a tactic that was employed by State Farm or any of State Farm's attorneys on this case, nor does it blame State Farm for its actions.  The Colwell Declaration only further proves that true.  However, the Court will subsequently deny State Farm's first request.  For the sake of clarity, the Court will now turn to State Farm's third request regarding limiting Hart's opinions before addressing whether Hart meets the requirements under Federal Rule of Evidence 702.

## II.    Proper Substitution

Although a substitution was allowed for Hart in place of Colwell, Smith argues that Hart's opinions go outside the scope of a substitution and instead, have allowed Hart to make several opinions after the initial expert deadlines has concluded.  The Court agrees.  While the Court allowed for a substitution to occur after the expert deadline has passed, the report and intended opinions of Hart exceeds the scope of the original expert opinion, and for that reason, Hart's testimony will be limited during Smith's case-in-chief.

The purpose of allowing expert substitutions is to put the movant in the same position it would have been in "but for the need to change experts; it is not an opportunity to designate a better expert." *Am. Can! v. Arch Ins. Co.*, No. 3:20-CV-850, 2022 WL 1467424, at *3 (N.D. Tex. Apr. 6, 2022) (quoting *United States ex rel. Agate Steel, Inc. v. Jaynes Corp.*, No. 2:13-CV-01907,

2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015)).  If a party intended for the original expert witness to testify regarding causation, a "proper substitution" would allow the newly retained expert to testify as to causation.  However, if the substituted expert intends to offer additional conclusions, the Court will conduct an analysis to determine whether the replacement expert's report and testimony are prejudicial to the opposing party.  *Id.*  Generally, courts allowing expert substitutions after the close of discovery have limited the subject matter opinions to those that were included in the first expert's report.  *See id.*; *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-CV-179, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014); *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 04-CV-00396, 2010 WL 3892860, at *4 (N.D. Ind. Sept. 30, 2010); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01509, 2021 WL 3617152, at *2 (S.D. Ohio Aug. 16, 2021).  This does not mean that the substituted expert is limited to the exact same conclusion as the previous expert, so long as the new opinion is "substantively similar" and not contrary or inconsistent with the original opinion.  *Am. Can!*, 2022 WL 1467424, at *3.

The analysis for the pending motion is not the same as the analysis that the Court conducted in allowing the expert substitution in the first place.  Smith incorrectly argues that the Court "has already rejected Defendant's 'prejudice' argument" and that State Farm is asking the Court to "revisit" a finding that it has already made (Dkt. #116 at pp. 4–5).  There are two relevant prejudice analyses at play.  First, the Court was tasked with deciding whether leave would be permitted to make a substitution for Colwell, and the relevant inquiry there was whether allowing a witness substitution would prejudice State Farm (Dkt. #60; Dkt. #97).  Here, the Court must determine the scope of the substitution that it allowed, as the relevant inquiry is whether allowing the witness substitute to offer new opinions would prejudice State Farm.

In comparing Colwell and Hart, it is no question that some of Hart's opinions exceed the original opinions that were made by Colwell.  However, this does not apply to all of Hart's opinions.  Colwell conducted an initial estimate as to scope of the damages done to the Smith home on behalf of Qualico General Contracting and Remodeling ("Qualico").[2]  Colwell was a "property cost estimator," and his opinions were simply limited to those found in the written Qualico report (Dkt. #104, Exhibit 7 at p. 6).  However, Hart now intends to offer a number of opinions.  First, he intends to offer an estimate on the damage done to the Smith home (Dkt. #104, Exhibit 4 at p. 28).  While his estimate is significantly different than the estimate that Colwell initially produced, the Court finds that this new estimate is "substantively similar" to Colwell's opinion and the Court finds minimal prejudice to State Farm in allowing this opinion.  State Farm will have the opportunity to cross-examine Hart on his estimate and compare his estimate to the other estimates that were prepared for this case.

A second opinion that Hart intends to offer relates to the other expert reports in this case.  While Hart used Dr. Tom Witherspoon's ("Witherspoon") report to create his estimate and he will likely have to testify to such fact, Hart will not be allowed to simply bolster Witherspoon's report or comment on the reliability of State Farm's experts.  This is because these opinions were not made by Colwell and allowing Hart to opine as to each of the other expert's reports would be highly prejudicial to State Farm.  Essentially, the Court would be allowing a conclusion witness that could come in at the last minute and testify why every witness that agrees with him is correct and point out all the flaws with reports that disagree.  While Hart may testify as to how he came to his ultimate estimation of damages and defend his findings, he will not be allowed to be used

---

[2] As State Farm points out, the report's listed estimator is "Dan McClure," not Chris Colwell.  However, Smith has continuously represented to the Court that Chris Colwell is actually the one who authored this report (*see* Dkt. #104, Exhibit 7 at p. 6).

on the offensive, attacking the reports of other witnesses wholly unrelated to his estimate during Smith's initial presentation of its evidence.  Whether Hart commenting on State Farm's expert witnesses in a rebuttal case may be a valid option for Smith, the Court declines to make a ruling on that issue at this time, as it was not raised by either party.

A third opinion that Hart makes in his deposition but fails to include in his actual report is that the damages incurred are caused by the tornado.  The Court recognizes that Hart admits that he was not retained to opine on causation, however, in his deposition, Hart does state that the tornado was the cause of the damage (Dkt. #104, Exhibit 2, pp. 22, 50).  In the Qualico report, Colwell lists "Tornado" under the "Type of Loss," and Hart's repair estimate includes the same (Dkt. #111, Exhibit 2 at p. 2).  Because this was included in the Qualico report, the Court will allow Hart to opine as to causation, assuming he can lay the proper foundation at trial as to how the damages are caused by the tornado.

A fourth opinion that Hart offers relates to the presence and necessity to remove hazardous materials.  This issue has several parts, as Hart first identifies hazardous material present in the Smith home, and then Hart considers the necessity for them to be removed in his estimate. However, Hart also comments on State Farm's witnesses and their lack of "education, training or experience" in dealing with hazardous materials.  In the Qualico report, Colwell does account for the "Demolition of Hazardous Materials per bid from Team Enterprises" in his estimate (Dkt. #104, Exhibit 7 at p. 89).  However, Colwell does not criticize other expert witnesses on their lack of experience in dealing with hazardous materials.  Therefore, to ensure that Hart's opinion is a proper substitution, Hart may testify how he concluded that there were hazardous materials in the home and why the need to remove hazardous materials was relevant for his estimate.  He may also explain that a failure to include a removal of hazardous materials may explain some of the

differences in price with other estimates.  However, Hart may not testify during Smith's case-in-chief as to why he believes that the reasoning why an estimate was wrong was due to the expert's lack of experience with hazardous materials.

State Farm raises three other conclusions that Hart makes in his deposition that should be excluded from trial: asbestos remediation, breach of fiduciary duty, and State Farm's failure to properly investigate Smith's claim.  The Court agrees with these requests.  All three opinions are far outside the scope of the substitution that the Court allowed, as it cannot be said that those opinions are "substantively similar."  The Court recognizes that Hart states in his report that one of State Farm's expert witnesses "exhibit[s] a lack of knowledge of the hazardous nature of the processes involved in the remediation of asbestos and lead-containing materials" (Dkt. #104, Exhibit 2 at p. 60).  Unlike the hazardous materials, asbestos is not mentioned at all in Qualico report.  Hart also writes that State Farm "failed to provide knowledge and skilled personnel to properly handle the claim in a timely manner and has failed in their fiduciary to their clients, the Smith family" (Dkt. #104, Exhibit 2 at p. 77).  With trial quickly approaching, State Farm will suffer as a result of these new opinions being made at the last minute.  All these opinions mentioned above will be excluded from trial.  Hart's statements in his report far exceed the opinions that were initially made by Colwell, and if Smith wanted Hart to make these conclusions to help prove his case, Smith could have retained Hart much earlier in the proceedings.

Ultimately, the Court will grant State Farm's request to limit Hart's testimony to his conclusions regarding the estimate that he conducted and the cost of the damages to the Smith home.  As to the causation portion, the Court finds that Hart is permitted to testify as to causation under the proper substitution argument.  Whether Hart can lay the proper foundation to issue such an opinion will be determined at trial.  Hart will not be allowed to elicit any testimony during its

case-in-chief regarding the reliability of State Farm's expert witnesses, asbestos remediation, a witness lacking experience with hazardous materials, a potential breach of fiduciary duty, and State Farm's investigation into the Smith claim.  The Court will now turn to State Farm's argument that Hart does not satisfy the requirements of 702.[3]

### III.    *Daubert*

State Farm argues that Hart fails to satisfy the requirements under *Daubert*, because Hart lacks the requisite qualifications and his specific methodology for his opinions are unreliable (Dkt. #104 at pp. 7–10).  State Farm asserts that because Hart does not satisfy these requirements, his testimony should be excluded in its entirely.  The Court will address both concerns.

Starting with the issue of qualifications, the Court finds that Hart is qualified to testify regarding an estimate of damages given his construction background.  Hart is the President of William C. Hart Construction, LLC and does consulting work for Joe Hall Roofing and Contracting, where he has participated as an expert witness and consultant in over 700 cases (Dkt. #104, Exhibit 2 at p. 16; Dkt. #111 at p. 5).  State Farm even points out that he has extensive experience in the construction industry (Dkt. #104 at p. 7).  Hart has testified at least sixteen (16) times as an expert witness on construction costs and causes in other cases (Dkt. #104, Exhibit 2 at p. 6).  Based on that information, the Court finds that he has the necessary "knowledge, skill, experience and training" to issue his conclusion.  FED. R. EVID. 702.  The Court will now turn to the methodology that Hart used.

---

[3] The Court recognizes that State Farm's *Daubert* arguments relate to all of Hart's opinions, not just the opinion related to the damages estimate.  Because the Court has now disposed of a number of Hart's opinions, the Court will only address whether Hart's opinion related to the damages estimate satisfies the requirements of Federal Rule of Evidence 702. As to the causation opinion, the Court will determine at trial if Hart is allowed to make such an opinion, given its finding that allowing such an opinion would be sufficient under the "proper substitute" argument.

State Farm's main argument here focuses on the fact that Hart did not inspect the house himself, rather, he relied on the photographs in Witherspoon's report to inspect the scene (Dkt. #104 at p. 9).  Hart also had the opportunity to view other expert reports for this case.  The Court does not find State Farm's concerns as enough to find Hart's methodology as unreliable.  *See Graham v. Hamilton*, 872 F. Supp. 2d 529, 534 (W.D. La. May 23, 2012) (concluding that expert's methodology was adequate based on an extensive viewing of the vehicle and pictures of the accident scene).  Hart's opinion requires him to evaluate the damage done to the Smith home and estimate how much repairs would cost.  This evaluation could surely be done without viewing the damage first-hand, although visiting the scene is likely preferred.  An expert witness receiving information from another source without viewing the scene of the accident itself is allowable in certain cases and the Court finds that is the case here given the nature of Hart's opinion.  *See Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Penn. Sept. 30, 1994) (discussing that an expert could identify the source of a fire from photographs and a lengthy video tape of the fire scene); *Comm. Ass'n Underwriters of Am., Inc. v. Rhodes Develop. Group*, No. 1:09-CV-257, 2013 WL 818596, at *8 (M.D. Penn. Mar. 5, 2013) (finding that prejudice was mitigated because expert was allowed to view other expert reports and the sketches and photographs attached to those reports).  State Farm will have the opportunity to cross-examine Hart on the fact that he did not visit the scene, and it will be up the jury to decide ultimately how much weight they should give to his opinion based on this fact.  Additionally, by the time the substitution for Colwell was allowed, the initial lot of the Smith home was sold, and the home has been ultimately destroyed (Dkt. #106 at p. 20).  Therefore, if this Court imposed a requirement that the expert witness as to the cost of damages must visit the premises in order for his or her opinion to be reliable, no new witness would be allowed to substitute for Colwell.  The Court finds that Hart's methodology meets the

threshold requirement under Federal Rule of 702, and his opinion as to the cost of damages will not be excluded under the Rules of Evidence.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Exclude or in the Alternative Limit the Expert Opinions of Bill Hart (Dkt. #104) is **GRANTED in part** and **DENIED in part**, as set forth in this opinion.

**IT IS SO ORDERED.**

**SIGNED this 23rd day of January, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE