**United States District Court**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

GARY SMITH and MARTHA SMITH, §
§
*Plaintiffs,* §
§
v. § Civil Action No. 4:21-CV-837
§ Judge Mazzant
STATE FARM LLOYDS, INC., §
§
*Defendant.* §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Plaintiffs' Motion for New Trial (Dkt. #161) and Defendants' Amended Bill of Costs (Dkt. #159). Having considered the motions, the Court finds that the Plaintiff's Motion for New Trial should be **DENIED** and Defendant's Motion for Costs should be **DENIED**.

## BACKGROUND

This case arose out of an insurance agreement between the parties and a question of payment after a tornado struck Plaintiffs Gary and Martha Smith's (collectively, the "Smiths") home (Dkt. #6 ¶ 3). No dispute existed regarding the fact that the Smiths' home was damaged in October 2019 (Dkt. #161 at p. 6; Dkt. #178 at p. 3). Rather, the main dispute arose after State Farm made a payment to the Smiths that supposedly covered its contractual obligations to the Smiths (Dkt. #178 at pp. 11–12). The lawsuit essentially came down to one (1) question—was that payment enough (Dkt. #178 at p. 1)?

The insurance agreement between the Smiths and Defendant State Farm Lloyds, Inc. ("State Farm") provided coverage in three (3) distinct categories. These categories were (1) losses

to the insureds' personal residence (Coverage A); (2) losses to insureds' personal property (Coverage B); and (3) additional living expenses that the insureds incurred (Coverage C) (Dkt. #145, Exhibit 1 at pp. 8–11). Additional living expenses consisted of "the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living" when a loss that the insurance agreement covered caused the insureds' personal residence to become "unhabitable" (Dkt. #145, Exhibit 1 at p. 11). The policy required State Farm to pay additional living expenses to the Smiths for the shortest of (1) "the time required to repair or replace the premises;" (2) "the time required for [the insureds'] household to settle elsewhere;" or (3) "[the passage of] 24 months" (Dkt. #145, Exhibit 1 at p. 11).

The Smiths' theory was that the tornado lifted their home off of its foundation, twisted or racked, and then fell back onto the foundation (*See*, *e.g.*, Dkt. #173 at 13:9–15; 22:4–5). This situation would cause extensive damage to the framework of the home (*See*, *e.g.*, Dkt. #173 at 17:10–14). Under this theory, the required repair costs (ex. $733,491.14 according to one of the Smiths' experts) would be significantly higher than the amount State Farm paid to the Smiths for repairs ($146,176.13) (*See*, *e.g.*, Dkt. #146, Exhibit 3 at p. 6, Dkt. #174 at 39:9).

State Farm disagreed with the Smiths' theory and claimed that the damage to the Smiths' home was less extensive (Dkt. #170 at 20:5–13, 20:24–21:1). Further, State Farm claimed that the Smiths' cost estimates to repair their home were too high and would involve much greater work than necessary (Dkt. #170 at 20:3–8).

A multitude of pretrial disputes existed between the parties. Issues with scheduling depositions, evasive written discovery responses, and problems with the corporate representative deposition were just a few of the subjects of those disputes. The Smiths filed three (3) motions for

sanctions against State Farm (Dkt. #51; Dkt. #81; Dkt. #93). The Court found wrongdoing by all parties, but ultimately, the Court found that some of State Farm's conduct rose to the level of sanctionable conduct (Dkt. #91; Dkt. #184). Therefore, the Court ordered State Farm to pay $9,995.50 to the Smiths due to State Farm's pretrial conduct (Dkt. #184).

When State Farm filed its initial trial exhibit list, it did so: (1) after the deadline listed in the Scheduling Order; and (2) with only references to "general categories" of information instead of listing out each exhibit as it was required to do. However, the Court remedied this situation (Dkt. #110 at pp. 40–44). At the pre-trial conference, the parties argued about the trial exhibit list and its alleged deficiencies, and the Court agreed with the Smiths. In response, State Farm asked for an opportunity to "make it right" (Dkt. #110 at 43:15). The Court granted this request, giving State Farm a hard deadline of amending its trial exhibit list by the next Tuesday, a week before opening statements were set to begin (Dkt. #110 at 44:20–24). State Farm then filed Defendant's First Amended Exhibit List before this new deadline passed (Dkt. #107).

Despite the issues with the evidentiary list that occurred during the pre-trial conference, the issues with the State Farm's exhibit lists were not over, continuing with Defendant's Second Amended Exhibit List (Dkt. #120). On the first day of trial, State Farm asked to supplement its exhibit list again, only this time to add certain exhibits that it had only disclosed to the Smiths the weekend prior to trial (Dkt. #120). The main problem—the weekend before trial was the first time State Farm made the Smiths aware of the existence of some of those exhibits (Dkt. #153 at 77:21–23). While the Court has previously found that a week to review several exhibits that the Smiths already knew existed was more than enough time to be prepared for trial in the case of Defendant's First Amended Exhibit List, the same rule did not apply to a set of over 900 documents that the

Smiths received only a few days before the first day of trial (Dkt. #153 at 77:18–21, 77:24–25, 78:7–10). The parties raised this issue to the Court and the Court immediately issued a conditional ruling. The Court told State Farm that they were not allowed to use Exhibits 127–149 without first approaching the bench (Dkt. #153 at 77:18–21, 77:24–25, 78:7–10).[1]

The parties went to trial on January 23, 2023, and after a five (5)-day trial, the jury returned with a take-nothing verdict in favor of State Farm (Dkt. #147). The pending motions are the final set of motions regarding this trial, as the Smiths seek a new trial and State Farm seeks an award of costs in its favor (Dkt. #159; Dkt. #161). The Court consolidates these motions and addresses both in this Order.

On February 28, 2023, State Farm filed the pending bill of costs (Dkt. #159). On March 8, 2023, the Smiths filed their response and objections to State Farm's bill of costs (Dkt. #166). State Farm did not file a reply.

On March 2, 2023, the Smiths filed the pending motion for new trial, arguing that based on fairness and the great weight of the evidence, they are entitled to a new trial (Dkt. #161). On March 27, 2023, State Farm responded, arguing that ample evidence to support the jury's verdict exists and that State Farm's conduct does not arise to the standard necessary to grant a new trial (Dkt. #178). On April 20, 2023, the Smiths filed a reply (Dkt. #186). On April 26, 2023, State Farm filed a sur-reply (Dkt. #188). On March 16, 2024, the Smiths filed a notice of supplemental

---

[1] The Court's ruling that State Farm could not use the late disclosed exhibits without first approaching the bench functioned similarly to an order granting a motion in limine. An order granting a motion in limine is not a definitive ruling on the admissibility of the evidence. *See, e.g.*, *United States v. Picazo-Sanchez*, No. 9:22-CR-43, 2023 WL 8355797, at *1 (E.D. Tex. Nov. 30, 2023).

authority, citing to the Fifth Circuit's recent decision of *Clapper v. American Realty Investors, Incorporated*. No. 21-10805, 2024 U.S. App. LEXIS 5727 (5th Cir. Mar. 8, 2024). [2]

## LEGAL STANDARD

### I.   Motion for New Trial

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party in a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is grounds for granting a new trial . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61. "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir.1979).

To be entitled to a new trial, Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton Healthcare*, No. A-10-CV-650, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser–*

---

[2] The Court finds *Clapper* to be irrelevant to the issues in this case. The issue in *Clapper* was that one party's counsel made frequent improper and personal attacks against opposing counsel and one of the opposing parties at trial and during closing argument. *Id.* at *5–14. No similar issues are present in this case.

*Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). A jury verdict is entitled to great deference. *Dresser–Rand Co.*, 361 F.3d at 839. "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988).

## II.   Bill of Costs

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). The Court may tax the following:

1. Fees of the clerk and marshal;
2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees under section 1923 of this title;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The Fifth Circuit has explained that "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). The Court "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so" because the denial of costs is considered "in the nature of a penalty." *Schwarz*,

767 F.2d at 131; *Baez v. U.S. Dep't of Just.*, 684 F.2d 999, 1004 (D.D.C. Circuit 1982). "The burden is on the party seeking an award of costs to show entitlement to an award." *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-CV-00764, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015).

> The Court has discretion to deny costs when:

> [The] suit was brought in good faith and denial is based on at least one of the following factors: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources."

*Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2668, 234 (4th ed. 1998).

## ANALYSIS

The Court first addresses the Smiths' motion for new trial. Then, the Court considers the State Farm's motion for costs. The Court finds that both motions should be denied.

### I. Motion for New Trial

The grounds upon which the Smiths request a new trial fall into four (4) categories: (1) State Farm's improper pretrial conduct; (2) State Farm's late disclosure of exhibits the day before jury selection; (3) the Court's decision to not exclude certain exhibits at trial; and (4) whether the jury's verdict was against the great weight of the evidence (Dkt. #161).[3] The Court will address each category in turn.

---

[3] The third category, "the Court's decision to not exclude certain exhibits at trial," consists of what the Smiths identify as two grounds for a new trial. The Smiths describe these two grounds as "Defendant's counsel Improper use of exhibits in the presence of the jury and prejudiced Plaintiffs and made the trial unfair" and "[t]he Court failed to

### A.      State Farm's Pre-Trial Conduct

The Court agrees with the Smiths that State Farm's conduct leading up until trial should not be rewarded. However, the Court is of the view that State Farm's conduct does not necessitate a new trial because any problems raised were properly remedied. Therefore, the Smiths' claim that State Farm's conduct "made the trial unfair" is not an accurate statement (Dkt. #161 at p. 1).

Most of the Smiths' arguments focus on conduct that occurred during trial. However, the Smiths also argue that "Defendants consistently, during discovery in the pretrial process, failed to comply with the Court's Order Governing Proceedings (Dkt. #5) and the Court's Scheduling Order (Dkt. #8)" and that doing so prejudiced the Smiths in their ability to prepare their case for trial (Dkt. #161 at p. 14). The Court does not deny the fact that State Farm missed some deadlines and that some of its filings were inadequate.

For example, the Smiths correctly point out the filing of State Farm's initial exhibit list in their briefing (Dkt. #161 at p. 14). When State Farm filed its initial trial exhibit list, it was filed: (1) after the deadline that was listed in the Scheduling Order; and (2) with only references to "general categories" of information instead of listing out each exhibit as it was required to do. As previously discussed, the Court remedied this situation by giving State Farm a hard deadline of amending its trial exhibit list by the next Tuesday, a week before opening statements were set to begin (Dkt. #110 at 44:20–24).

As the Court has already informed the parties, while Defendant's First Amended Exhibit List was late, the late disclosed exhibits were not a surprise to the Smiths.[4] Because the Court finds

---

exclude Defendant's exhibits which were not properly disclosed in accordance with the Court's Orders" (Dkt. #161 at pp. 10–13, 15–16).

[4] For the sake of clarity, these late disclosed exhibits do not refer to State Farm's exhibits that State Farm disclosed to the Smiths the weekend before trial in Defendant's Second Amended Exhibit List (Dkt. #120). The Court discusses

that the Smiths had adequate time to review State Farm's exhibit list, the Court does not find that the circumstances surrounding Defendant's First Amended Exhibit List list made the trial so unfair as to warrant an entire new trial. *See 3rd Eye Surveillance, LLC v. e-Watch Corp.*, No. 6:14-cv-725-JDL, 2017 WL 11630486, at *5 (E.D. Tex. June 19, 2017) (finding that "no 'damage was done'" and a new trial was not warranted where the plaintiff had only one (1) week to review the defendant's 101 exhibits as part of its trial preparations).

The Smiths' general assertion that State Farm's improper pretrial conduct prejudiced the Smiths' ability to prepare for trial does not satisfy their burden to demonstrate with reasonable clarity that prejudicial error occurred. *See Sibley*, 184 F.3d at 487. With the exceptions of State Farm's exhibits that State Farm disclosed to the Smiths the weekend before trial (Defendant's Second Amended Exhibit List) and the late disclosed exhibit list (Defendant's First Amended Exhibit List), the Smiths do not state how State Farm's pretrial conduct was improper (*See* Dkt. #161 at pp. 14–15, 17–18; Dkt. #186 at p. 2). Given the Smiths' lack of specificity, they have not carried their burden on the grounds of the State Farm's pretrial conduct. *See Sibley*, 184 F.3d at 487. Accordingly, the Smiths' request for a new trial based on State Farm's pretrial conduct is denied.

**B.    State Farm's "Supplemental" Exhibits**

The Smiths argue that they should receive a new trial based because they "were prejudiced in their preparation for the trial by not having access" to the over 900 photographs that State Farm disclosed just before the start of the trial in Defendant's Second Amended Exhibit List (Dkt. #161 at p. 16). Further, the Smiths claim that they were "unfairly surprised by State Farm's late

---

those exhibits in a later section, but the Court ruled that State Farm could not use those exhibits without first approaching the bench.

disclosure of the photographs" (Dkt. #161 at pp. 16–17). However, the Smiths admit that the Court excluded the very same photographs (Dkt. #161 at p. 16).[5]

Other than the Smiths' claim that they "were prejudiced because they never had the opportunity to review and deliberate the photographs in preparation for trial," the Smith's do not show how this outcome prevented them from fairly presenting their case (Dkt. #161 at p. 114). Further, no party presents, and the Court cannot find, any authority suggesting that the Court may grant a new trial in this circumstance. The Court already remedied this problem and disallowed State Farm from showing any of the last-minute exhibits to the jury without first approaching the bench (Dkt. #153 at 77:18–21, 77:24–25, 78:7–10). Therefore, the Court does not find that the late disclosure and production of the over 900 photographs impacted the Smiths' ability to fairly present their case. The Court rejects this ground as a basis for a new trial.

Importantly, the Smiths have not shown that the late disclosure and subsequent exclusion of the over 900 photographs adversely influenced the jury's verdict. *See Munn v. Algee*, 924 F.2d 568, 573 (5th Cir. 1991). Although the photographs may have provided some additional information for the Smiths to utilize during their presentation of the case, the Smiths do not identify any specific information involving those photographs that could have ultimately resulted in a different verdict in the Smiths' favor (*see generally* Dkt. 161; Dkt. #186). Further, no evidence suggests that State Farm intentionally acted to prevent the Smiths from being prepared for trial. The Court sees no valid basis for granting a new trial based on this ground because the Court remedied the situation.

---

[5] This section does not address any photographs within Defendant's Exhibits 148 that the Court later admitted into evidence because the Smiths did not timely object to the evidence's admission.

### C.      Exhibits Shown to the Jury

The Smiths also raise an argument regarding specific evidence that State Farm showed to the jury at various times throughout trial. The Smiths specifically point to Exhibits 104, 127, 148, and 151 as problems that can only be remedied through the granting of a new trial (Dkt. #161 at pp. 11–13, 15). The Court declines to grant a new trial based on the reasons discussed below. Further, the Court does not find that State Farm's presentation of Exhibits 104, 127, 148, and 151 to the jury ultimately influenced the jury's verdict. *See Munn*, 924 F.2d at 573.

### 1.      Exhibit 104

The first exhibit the Smiths discuss, Exhibit 104, was not part of the exhibits that State Farm only sent to the Smiths the weekend before trial (*Compare* Dkt. #107 at p. 6, *with* Dkt. #120 at p. 6). Rather, Defendant's First Amended Exhibit List listed Exhibit 104 "State Farm Lloyds inspection photos" paired with the relevant Bates numbers, which State Farm filed on January 17, 2023 (Dkt. #107 at p. 6). The Smiths claim that State Farm did not produce Exhibit 104 until the weekend before trial (Dkt. 161 at p. 104). As State Farm correctly points out, January 17, 2023, was not the first time that State Farm sent these photographs to the Smiths (Dkt. #178 at p. 6). In Defendant's first supplemental disclosures, State Farm included and sent these photographs to the Smiths.[6] The Court will not entertain any request for a new trial based on the disclosure of this information being too close to trial because the Smiths had access to these photographs months before trial began.

---

[6] State Farm indicates that it provided the Smiths with documents "bates labelled [in the range of] SF[-]Smith 00001–05767" (Dkt. 51, Exhibit 2 at p. 5). Exhibit 104 consists of photographs ranging from SF-Smith 003635 through SF-Smith 004141 (Dkt. #146, Exhibits 6–75).

The Smiths also argues that Exhibit 104 should have been excluded based on a lack of authentication (Dkt. #161 at p. 15). However, the Court notes that the Smiths did not object to the admission of Exhibit 104 based on a lack of authentication when it was offered at trial (Dkt. #153 at 86:23–87:17). Without a proper authentication objection on the record, the Court will deny the Smiths' request and find that Exhibit 104 properly entered evidence. *See* FED. R. CIV. P. 51(c)(2).

### 2.    Exhibits 127 & 151

Next, the Smiths address Exhibits 127 and 151. Exhibit 127 consisted of file notes in State Farm's claim file for the Smiths' case (Dkt. #146, Exhibits 4, 5). Exhibit 151 was an estimate that State Farm provided with respect to the Smiths' dwelling (Dkt. #161 at p. 8). As an initial matter, the Smiths correctly identify these issues because State Farm violated the Court's prior conditional ruling. Both of these exhibits were part of the exhibits that State Farm disclosed only the weekend before trial and the Court required that State Farm could not introduce the exhibits without first approaching the bench (Dkt. #161 at pp. 12–13). Defendant's Second Amended Exhibit List did not even include Exhibit 151 (*See* Dkt. #120).

However, the Smiths did not properly bring these issues to the Court's attention during trial. When State Farm introduced both Exhibits 127 and 151, the Smiths did not raise an objection regarding the Court's prior conditional ruling (Dkt. #155 at 11:1–12:12; Dkt. #170 at 11:8–12:4; Dkt. #177 at 4:7–22:19).[7] The Smiths later raised an objection to Exhibit 127 regarding this issue, but the Court overruled the objection because the Smiths waived their objection when they allowed

---

[7] When State Farm introduced Exhibit 151, the Smiths raised a hearsay objection, but the Court overruled this objection since State Farm laid the proper foundation that the exhibit met the requirements for the business records exception (Dkt. #155 at 11:1–12:12; Dkt. #170 at 11:8–12:4).

the exhibit in the first time without objection (Dkt. #155 at 25:21–27:5). Therefore, the Smiths have waived any error relating to Exhibit 127. *See* FED. R. EVID. 103(a).

The Smiths did request that the Court give a curative instruction as to Exhibit 151. The Court granted this request because State Farm never included Exhibit 151 on its exhibit list (Dkt. #155 at 54:1–55:19). Then, the Court instructed the jury that Exhibit 151 had been stricken and that they were to disregard the evidence (Dkt. #183 at pp. 14:20–15:6).[8]

"A jury is presumed to follow its instruction[]." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) "A new trial is required only when, after a review of the entire record, it appears that there is a significant possibility that the prejudicial evidence had a substantial impact on the jury verdict." *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). "[The Fifth Circuit] give[s] great weight to the trial court's assessment of the prejudicial effect of the evidence, and prejudice may be rendered harmless by a curative instruction." *Id.* The Smiths have not provided any explanation as to why the Court's curative instruction could not resolve any prejudice deriving from Exhibit 151. The Court finds that the jury followed its instruction and did not consider Exhibit 151 in coming to its conclusion. *See Angelone*, 528 U.S. at 234. Accordingly, the Court finds State Farm's usage of Exhibit 151 does not warrant a new trial.

---

[8] The Court provided the following curative instruction to the jury regarding Exhibit 151:

> Okay. Ladies and gentlemen, I am going to instruct you that Exhibit 151 that was just recently admitted, the Court is striking that exhibit. I'm going to tell you to disregard it.
> Exhibits were required to be produced, by order of the Court, by certain deadlines; and it was one of the several exhibits that were produced by State Farm on Sunday, the day before the trial began, which is not appropriate, so it's being struck. So you should disregard anything regarding Exhibit 151, both the exhibit itself, which won't go back in the record, as well as any testimony regarding that.

(Dkt. #183 at pp. 14:20–15:6).

"[The Smiths] acquiesced in the court's curative instruction[] by failing to request a mistrial." *Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991). "[The Smiths] made a strategic determination not to request a mistrial at the time [State Farm introduced Exhibit 151], and [the Court] will not allow [them] to challenge the verdict based on [the] same [issue] having had a chance to see the verdict." *Id.*

For the reasons discussed above, the Smiths have not carried their burden regarding State Farm's introduction of Exhibits 127 and 154. Therefore, the Court declines to grant a new trial upon these grounds.

### 3.    Exhibit 148

The final exhibit that the Smiths discuss in their new trial motion is Exhibits 148.[9] This exhibit contained photographs of the Smiths' home (Dkt. #153 at 27:18–63:18). During the cross examination of one of the Smiths' expert witnesses, Dr. Tom Witherspoon, State Farm questioned Dr. Witherspoon using some photographs of the Smiths' home (Dkt. #153 at 27:18–63:18). When State Farm displayed these photographs to the Court and the jury, they were not Bates labeled (Dkt. #153 at 60:13–15). State Farm informed the witness that the photographs were from Exhibit 147, which consisted of photographs "submitted by Plaintiffs" (Dkt. #120 at p. 8; Dkt. #153 at 27:18–21, 28:1–3, 28:10–12). In reality, at least some of the photographs were from Exhibit 148, not Exhibit 147 (Dkt. #153 at 60:16).

During the cross-examination, State Farm began referring to the photographs as being from Exhibit 148 (Dkt. #153 at 48:17–23). However, the Smiths did not object at this time (Dkt. #153 at

---

[9] The Smiths discuss both Exhibits 148 and 149 in the same context (Dkt. #161 at pp. 11–12). However, the record only reflects that State Farm used Exhibit 148 under the guise of Exhibit 147 (*See*, *e.g.*, Dkt. #153 at 60:16). Therefore, the Court will limit its discussion to Exhibit 148.

48:17–60:22). The Smiths raised an objection to the showing of these photographs only significantly later in the cross-examination (Dkt. #153 at 60:17–22). When the Smiths raised an objection, they argued that the photographs were not properly disclosed and were subject to the Court's prior conditional ruling requiring State Farm to approach before offering such exhibits (Dkt. #153 at 60:17–22, 61:2–7, 62:1–5). The Court sustained the Smiths' objection and then it granted its request for a jury instruction to disregard the photographs shown to Dr. Witherspoon during the cross-examination (Dkt. #153 at 63:8–15). The Court instructed the jury to "disregard these photographs" (Dkt. #153 at 62:10).

Again, "[a] jury is presumed to follow its instruction[]." *Angelone*, 528 U.S. at 234. The Smiths have not provided any explanation as to why the Court's curative instruction did not resolve any prejudice deriving from Exhibit 148. The Court finds that the jury followed its instruction and did not consider Exhibit 148 in coming to its conclusion. *See id.* Accordingly, the Court finds State Farm's usage of Exhibit 148 does not warrant a new trial.

Further, the Smiths acquiesced to the Court's curative instruction by not requesting a mistrial. *Winter*, 926 F.2d at 473. Thus, the Smiths made a strategic determination to not request a mistrial and the Court will not reward that decision with a new trial. *Id.* While State Farm's handling of the evidence at trial was careless at times, the Smiths have not identified a reason for how the Court's handling of these problems did not serve as a valid remedy.

### D.  Whether the Jury's Verdict was against the Great Weight of the Evidence

The Smiths' final argument as to why it is entitled to a new trial is that the verdict was against the great weight of the evidence that was offered at trial (Dkt. #161 at pp. 5–10). The Smiths claim that State Farm failed to comply with the insurance agreement that it had with the Smiths

(Dkt. #161 at pp. 5–10). Most of the five (5)-day trial focused on this breach of the insurance agreement question, as both sides offered expert testimony to discuss the actual damage the tornado caused in October 2019 and whether the payment that was made by State Farm was sufficient to conduct the necessary repairs. The Smiths divide compliance with the insurance agreement into three (3) categories: (1) the cost of repairs to the Smiths' dwelling; (2) the cost to repair or replace the Smith' personal property; and (3) the additional living expenses the Smiths incurred (Dkt. #161 at p. 7).[10]

### 1.      The Cost of Repairs to the Smiths' Dwelling

The Smiths argue that State Farm did not show that it provided the amount necessary to pay for the cost of repairs to the Smiths' home caused by the tornado (Dkt. #186 at pp. 4–7). Specifically, the Smiths divide the cost of repairs into structural repairs to the home and the removal of hazardous materials, such as asbestos (*See* Dkt. #161 at pp. 6–7). The Smiths' claims depended on the theory that the tornado lifted the house off its foundation, and twisted or "racked" it, and then slammed the house back down, causing extensive damage to the entire house (*See generally*, Dkt. #153). As the plaintiffs, the Smiths bear the burden of proof on their breach of contract claim. *Tex. Cap. Bank, N.A. v. Dall. Roadster, Ltd.*, No. 4:13-CV-625, 2015 WL 13807614, at *1 (E.D. Tex. May 29, 2015).

State Farm argues that the evidence did not support the Smiths' "all or nothing" choice based on the "lifted, racked[,] and slammed" theory (Dkt. 178 at 11–14). State Farm claims that it

---

[10] The jury found that State Farm did not fail to comply with the insurance agreement that it had with the Smiths (Dkt. #147 at p. 1). However, the jury also found that State Farm was not late to pay the full and complete insurance claim that it owed to the Smiths and that State Farm did not engage in any unfair or deceptive act or practice that caused damage to the Smiths (Dkt. #147 at pp. 5–6). The Court does not address these second two findings because the Smiths have not challenged them.

offered direct evidence that the Smiths' "house could be completely repaired with the actual cash value State Farm paid plus additional sums to match replacement cost (available if the repairs were made)" (Dkt. #188 at p. 2).

Regarding the structural repairs, State Farm provided evidence rebutting the Smiths' claimed costs. Gary Boyd testified that the Smiths' cost estimates (in particular that of Qualico) "[were] overbroad in their scope" and "included a lot of work that was not necessary as a result of the tornado damage to the house" (Dkt. #170 at 20:5–13, 20:24–21:1). Rather, he viewed the cost estimates as containing work necessary "to remodel your house" but "not related to tornado damage" (Dkt. #170 at 20:3–8). Further, State Farm offered evidence contradicting the Smiths' theory that the home required extensive repairs due to being lifted by the tornado, twisted, and slammed back onto the ground (*See generally* Dkt. #168). For example, Michael Shahid, Jr. testified that he found no evidence that the Smiths' home "was lifted and twisted and put back down on the foundation" (Dkt. #168 at 62:12–15). He provided extensive testimony to support this conclusion (*See* Dkt. #168 at 62:12–92:8).

State Farm provided sufficient testimony to undercut the Smiths' theory of how the tornado damaged their home (the "lifted, racked, and slammed" theory) and the corresponding costs to fix the home (because significantly less work could have been required to fix the home). The Smiths did not offer an alternative theory regarding the damage to their home and the costs to repair it. Therefore, the jury had a sufficient basis to find that State Farm did not breach the insurance agreement regarding tornado damage to the Smiths' home.

Next, the Smiths claim that they provided testimony from multiple experts regarding the cost to remove the hazardous materials, including asbestos, from their home (in the range of

$39,500 to approximately $42,500) (*See* Dkt. #161 at p. 7). In this lawsuit, the Smiths demanded $40,952 for the purposes of "[l]ead paint and asbestos removal" (Dkt. #106 at p. 9). The Smiths further argue that "[State Farm] offered no evidence to rebut [the Smiths'] evidence regarding the cost to remove the hazardous materials, and no evidence that [State Farm] paid [the Smiths] these costs" (Dkt. #161 at p. 7).

Two distinct grounds provide a basis for the jury to have found that State Farm did not breach the insurance agreement by not paying the required sums for the removal of hazardous materials. First, one of State Farm's expert witnesses, Gary Boyd, testified that the Smiths' estimates for asbestos abatement (particularly in the Qualico report) were "too large in scope . . . they just gutted the house; and I didn't think that was necessary at all" (Dkt. #170 at 21:3–8). This testimony constituted evidence rebutting the Smiths' cost estimates for asbestos removal or abatement. Second, the insurance agreement at issue expressly limits the coverage relating to contaminants such as asbestos and lead:

> [State Farm] will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils . . . contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY . . . Contaminants and pollutants include . . . asbestos, or lead . . .

(Dkt. #146, Exhibit 1 at pp. 32–33). These two grounds provide a sufficient basis for the jury to have found that State Farm did not breach the insurance agreement with respect to payments for hazard removal. Based on these reasons, the great weight of the evidence does not show that State Farm breached the insurance agreement with respect to the costs to repair the Smiths' dwelling.

### 2.      The Cost to Repair or Replace the Smiths' Personal Property

The Smiths argue that the evidence conclusively shows that State Farm did not pay $10,700 to the Smiths for personal property damaged in the tornado (Dkt. #186 at p. 7). Martha Smith testified that State Farm had not yet paid approximately $10,700 for the reimbursement of lost personal property (Dkt. #169 at 30:4–19). The Smiths claim that State Farm did not rebut this testimony (Dkt. #161 at p. 8). In response, State Farm argues that it provided it evidence on the amounts paid to reimburse the Smiths for personal property losses, and that the jurors were entitled to not believe Martha Smith's uncorroborated claim (Dkt. #178 at p. 15).

Martha Smith's testimony regarding personal property reimbursements is insufficient to warrant a new trial. The Smiths have presented evidence that State Farm paid $73,350.26 to the Smiths for the reimbursement of personal property (Dkt. #145, Exhibit 21 at p. 154). However, Martha Smith's claim that State Farm did not reimburse approximately $10,700 is vague and uncorroborated (*See* Dkt. #169 at 30:4–19). No other evidence supports her statement, and she did not specify what exact items State Farm did not provide reimbursement for (*See* Dkt. #169 at 30:4–19). The jury reasonably could have chosen to disbelieve her statement. Therefore, the great weight of the evidence does not show that State Farm breached the insurance agreement by not providing an additional reimbursement of $10,700 to the Smiths for lost personal property.

### 3.      Additional Living Expenses for the Smiths

Next, the Smiths argue that the great weight of the evidence shows that State Farm violated the insurance agreement by not paying additional living expenses to the Smiths (Dkt. #161 at p. 9). The Smiths claim that they presented unrebutted evidence of State Farm's failure to pay additional living expenses. According to the Smiths, "Gary Smith testified that [State Farm] refused to pay

[the Smiths'] $43,000 in additional living expenses incurred by [the Smiths]" (Dkt. #161 at p. 9). "[State Farm] offered no evidence disputing the additional living expenses incurred by [the Smiths] when their home became 'uninhabitable' because of the tornado" (Dkt. #161 at p. 9).

State Farm claims that "[the Smiths] were not owed any further [Additional Living Expenses] beyond the ten months they had received was supported by evidence [the Smiths] presented" (Dkt. #178 at p. 6). "The jury was entitled to decide that the Smiths lacked credibility in claiming that the [ten (10)] months of [Additional Living Expenses] State Farm paid was insufficient time to settle elsewhere" (Dkt. #178 at p. 6). "Martha Smith testified that [the Smiths] were able to relocate after the termination of their [Additional Living Expenses], staying in a friend's vacant house and then renting a house near their children" (Dkt. #178 at p. 5). State Farm paid the Smiths' earlier additional living expenses "in hopes that the Smiths would initiate repairs or engage in reconciliation of bids . . . [but] the Smiths never did" (Dkt. #178 at pp. 5–6).

Although neither party disputes that the Smiths' incurred the $43,000 of expenses, the Smiths do not specifically address whether the additional $43,000 of expenses occurred within limits of Coverage C of the insurance agreement. During the ten months that the Smiths received additional living expenses payments from State Farm, the Smiths never began repairs on their home (Dkt. #169 at 28:6–21; Dkt. #182 at 3:3–5). Further, the Smiths were able to relocate, albeit with difficulties, after State Farm ceased making payments for additional living expenses to them (Dkt. #178 at 28:19–29:20). Therefore, the jury could have reasonably found that "the time required for [the insureds'] household to settle elsewhere" passed and relieved State Farm of its obligation (*See* Dkt. #145, Exhibit 1 at p. 11). Based on this information, the jury could have reasonably concluded that State Farm did not breach the insurance agreement because

In sum, the evidence at trial supports a take-nothing verdict in favor of State Farm and the Smiths were never prejudiced to the point where the Court finds it necessary to conduct a new trial. As a result, the Smiths' motion for a new trial is denied.

## II.    Motion for Costs

As the prevailing party, State Farm requests that the Court award it $23,020.06 as costs (Dkt. #159). Although State Farm provided receipts for various expenses incurred, it did not attach an affidavit to its motion for costs or otherwise claim it necessarily incurred any expense in this case (*See* Dkt. #159). The Smiths object to State Farm's motion on several grounds, including that State Farm did not file a statutorily required affidavit and that State Farm did not meet its burden of proof to receive any costs (Dkt. #166 at pp. 3–4, 8).

"Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit . . . that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." 28 U.S.C. § 1924. "[T]he party seeking [taxable] costs will not get them unless it submits a bill of costs with the verification specified by statute and complies with any other procedural requirements that the local rules of the court in question impose." *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 339 (2021) (citing 28 U.S.C. §§ 1920, 1924); *see also Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 65 (5th Cir. 1994) ("In support of its motion for costs, Cessna attached the affidavit of its trial counsel, Peter Martin, in satisfaction of the verification requirements of 28 U.S.C. section 1924.").

The prevailing party must satisfy its burden of proving the amount and necessity of the costs. *See Holmes*, 11 F.3d 63, 64–65 (5th Cir. 1994) ("[T]he party seeking such cost must offer

some proof of the necessity."); *see also* 28 U.S.C. § 1924. In other words, the prevailing party must demonstrate its entitlement to an award of costs, it cannot merely present a list of costs incurred. *See Holmes*, 11 F.3d at 64.

State Farm has not attached an affidavit to its motion for costs (Dkt. #166). Further, State Farm has not attached or included in its motion any information indicating the necessity of its claimed costs (*See* Dkt. #166). Absent information on the necessity of the claimed costs, the Court cannot determine that State Farm is entitled to an award of costs. *See Holmes*, 11 F.3d at 64. A court cannot grant costs where a party does not comply with the requirements of 28 U.S.C. § 1924. *See City of San Antonio*, 593 U.S. at 339. Therefore, State Farm's motion for costs is denied.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for New Trial (Dkt. #161) is hereby **DENIED.**

It is therefore **ORDERED** that Defendants' Amended Bill of Costs (Dkt. #159) is hereby **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 25th day of March, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE